**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
                                  :

**UNITED STATES OF AMERICA,**         :       **S1 17 CR 390 (ALC)**

                                  :

          - v -             :

                                  :

**DANIEL GARCIA,**                     :

                                :

                   **Defendant.**     :

-------------------------------------------------------------X

## SENTENCING MEMORANDUM

Submitted by:
Xavier R. Donaldson, Esq.
Attorney for Daniel Garcia
1825 Park Avenue, Suite 1102
New York, New York 10035
(212) 722-4900
(212) 722-4966

**Donaldson & Chilliest, LLP**
**1825 Park Avenue, Suite 1102**
**New York, NY 10035**
**212-722-4900**
**212-722-4966**

September 30, 2019

<u>**VIA ECF AND EMAIL**</u>
Honorable Andrew L. Carter
United States District Court Judge
Southern District of New York
40 Foley Square
New York, New York 10007

       Re:    *United Stated v. Daniel Garcia*
               17 Cr 390 (ALC)

Dear Judge Carter:

      As this Court is aware, on November 2, 2018, Mr. Garcia, pursuant to a Plea Agreement, pleaded guilty to violating 21 USC Section 846 and 21 USC 841(b)(1)(C).

**ANALYSIS OF 18 USC 3553 FACTORS**

      18 USC Section 3553 calls upon this Court to consider specific factors, including the appropriate Sentencing Range, to impose a sentence on a defendant that is "sufficient but not greater than necessary" to comply with the goals of sentencing. *See, 18 USC Section 3553(a)*.  Indeed, any sentence imposed by the Court must be based upon an individualized assessment based upon the unique factors presented in the case at issue. *See*, *U.S. v. Gall*, 552 US 38, 39 (2007).

      Significantly, the United States Sentencing Guidelines merely reflect a "rough approximation of sentences that might achieve section 3553(a)'s objectives". *See*, *Rita v. United States* 551 US 338, 350 (2007).  The Court "may not assume that the Guidelines Range is reasonable." *Gall,* at 50.  As the Supreme Court declared in *Nelson v. United States*, 550 U.S. 350 (2009), "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Id.*, at 351 (emphasis in original).

      After giving both parties an opportunity to argue for whatever sentence they deem appropriate, the District Court should then consider all of the 3553(a) factors to determine whether they support the sentence requested by a party". *U.S. v. Gall*,

at 49-50.  It is our opinion that after considering all the factors articulated in 18 USC 3553, a sentence of **up to twenty-four months** is "sufficient but not greater than necessary" for Mr. Garcia's participation in this criminal conduct.

(1)    NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY OF
       AND CHARACTERISTICS OF THE DEFENDANT

**Nature and circumstances of the offense**

Mr. Garcia is charged in a narcotic conspiracy that involved the unlawful distribution of prescription pills in the Southern District of New York and elsewhere. Specifically, Mr. Garcia received prescription pills from another individual and then exchanged those pills with others in exchange for United States Currency.

**Characteristics of the Defendant[1]**

Mr. Garcia is fifty-nine (59) years old and one of six (6) children of Raul Garcia and Elisa Garcia. Mr. Garcia has five siblings:  Joe Garcia, 70, residing in Port St. Lucie, Florida; Ada Garcia, 65, residing in Aguadilla, Puerto Rico; William Garcia, 63, residing in Aguadilla, Puerto Rico; and Ferdinand Garcia, residing in Aguadilla, Puerto Rico. Mr. was born in Aguadilla, Puerto Rico but left Puerto Rico (without his parents consent or knowledge) at the age of thirteen (13) to come to New York City to try and find work and seek better opportunities.  Nota bly, while in Puerto Rico, he never completed the third grade and preferred to work instead of attend school. Thus, Mr. Garcia left Puerto Rico at the age of 13 with a third grade education and no family support en route to New York City to search for better opportunities.

Once in New York, Mr. Garcia was homeless as a teenager and seeking employment.  Eventually, he found employment at a pizzeria.  In 1978, at the age of eighteen (18), Mr. Garcia married Elisia Mercado. Eight (8) years later, Mr. Garcia and Mrs. Mercado obtained a divorce due to irreconcilable differences.   This marriage produced three children:  Daniel Garcia Junior, 38, residing in Orlando, Floriday; Justine Garcia, 37, residing in Staten Island; and Jonathan Garcia, 33, residing in Staten Island.

In 1988, Mr. Garcia married Rosie Callagorie.  Thirteen (13) years later, Mr. Garcia and Mrs. Callagorie were divorced.  This marriage produce two children: Diana, 31, residing in Staten Island; and Anthony Garcia, 25, residing in Florida.

In 2002, Mr. Garcia entered into his third marriage to Adelaida Garcia.  Mr. Garcia and Mrs. Garcia are still married and enjoy a wonderful, substantive relationship. Mrs. Garcia maintains employment for the New York City Department of Transportation. Mr. Garcia and Mrs. Garcia have two children: Marisela Garcia, 13; and Sebastian Garcia, 8.  Prior to Mr. Garcia being jailed on these charges, he was the primary economic care

---

[1] The defense would like to rely heavily on the "Personal and Family Data" section of the Final Presentence Report for this section.

[2] Notably, the Probation Department having all of the relevant facts and believing the

provider for his two (2) young children.  Due to Mr. Garcia's imprisonment, Mrs. Garcia is finding it extremely difficult to provide for their children's basic economic necessities. Moreover, because Mr. Garcia had a very close relationship to his children but particularly his young children (Marisela and Sebastian), Marisela has been crying almost every night and her school grades are beginning to suffer.  Moreover, Mrs. Garcia has noticed a significant change in her son, Sebastian's, behavior since Mr. Garcia has been incarcerated.  Indeed, Mrs. Garcia has indicated that she did not realize the magnitude of Mr. Garcia's effect on the children until he was gone.

As indicated above, Mr. Garcia came to New York alone as a young teenager looking for employment in 1973. Very soon after he arrived as a young teenager, he found employment at a local pizzeria.  From 1974 to 1986, Mr. Garcia maintained steady employment at neighborhood stores including a doll-making factory, an exercise bike making factory and two bodegas in Brooklyn.  From 1986 to 2002, Mr. Garcia was employed at Belfiore Meats.  From 2002 to 2017, Mr. Garcia maintained consistent employment at Top Tomato Super Store on Staten Island until he was laid off.  Thereafter, Mr. Garcia immediately found employment at Belfiore Meats and then as a chef at Market Fresh Supermarket until his detention on this matter.  Essentially, Mr. Garcia has maintained **steady employment for over thirty (30) years**.

Mr. Garcia is a fifty-nine (59) year old United States Citizen with a third grade education, over thirty (30) years of consistent employment and no prior juvenile adjudications or adult criminal convictions.  Mr. Garcia is currently suffering from a severe injury to his right shoulder that will require surgery and has significantly limited mobility in his left shoulder.  Prior to his detention in this matter, he resided in a structured environment in Staten Island with is wife and two children.

(2)    NEED FOR THE SENTENCE IMPOSED

**Reflect seriousness of the offense, promote respect for law & just punishment**

Mr. Garcia pleaded guilty to violating 21 USC Section 846 and 21 USC 841(b)(1)(C).  Consequently, Mrs. Garcia is facing a maximum of twenty (20) years of incarceration but **NOT** facing a minimum incarceratory sentence. Pursuant to the plea agreement, Mr. Garcia has a Level 29 with a Criminal History Category of I. Consequently, Mr. Garcia's United States Sentencing Guidelines Range is 87 - 108 months imprisonment with **NO** statutory minimum term of imprisonment. Because Mr. Garcia satisfied the "safety valve" requirements pursuant to 18 USC 3553(f), we believe his actual Guidelines Range is 70 – 87 months.[2]

---

[2] Notably, the Probation Department having all of the relevant facts and believing the Guidelines Range was 87 – 108 months suggested that Mr. Garcia should be sentenced to a variance of 48 months incarceration due to "lack of criminal history, first-time offender status, non-violent nature of the instant offense and positive adjustment to pretrial supervision and it appears that he made every effort to remove himself from the negative

We would agree that prosecution of the unlawful distribution of prescription drugs would serve a significant federal interest because the unlawful distribution of prescription drugs has contributed to a national epidemic of addiction that is adversely affecting everyone. As indicated above, Mr. Garcia is a fifty-nine (59) year old man.  She does not have a criminal record and he did not distribute prescription pills as his job or sole employment.  There is no doubt that Mr. Garcia distributed prescription pills for economic gain but it is important to emphasize that he did this as a supplement to his income not as a job.  To be crystal clear we are not minimizing his conduct, but far too often prosecutors stand before Judges in this District and elsewhere and emphasize when true whether a defendant is selling narcotics as his employment and if so, then that is, according to the Government worst than if the defendant has steady employment.

Moreover, Mr. Garcia should be distinguished in this epidemic from the medical professionals who are often necessary for the unlawful distribution of prescription pills to occur and his supplier. In this instance, Mr. Garcia is easily the middle man of the conspiracy and has received no role enhancements for his participation.

We anticipate the government's argument that oxycodone is a highly addictive, prescription drug and that the misuse of this drug has led to thousands of emergency room visits and that there have been hundreds of overdose deaths related to the use of Oxycodone both illegally and legally prescribed.  There is no reasonable argument against the fact that prescription overdoses has reached epidemic proportions in this country.  Mr. Garcia, however, should not be held responsible for the epidemic but solely for his individual role and related to his individual history and characteristics. Notably a felony conviction at 59 years old, the stigma attached to being a felon is significant punishment within itself and will generally serve any and all punishment purposes as it relates to an individual assessment of Mr. Garcia's case.

Finally, while the unlawful distribution of Oxycodone appears to be extremely profitable, there is no indication that Mr. Garcia's participation in this conspiracy, unlike others, lead to a lavish lifestyle, secured any expensive gifts or anything of the sort.  It appears, by all accounts and again without minimizing the severity, to be a crime of opportunity to supplement his income.

**Afford adequate deterrence to criminal conduct**

We wholeheartedly agree that the unlawful disbursement of prescription drugs are causing significant adverse consequences on society. While we appreciate the need for punishment when laws are broken, we also strongly urge the Court to consider "why" the crime was committed and whether significant incarceration is the appropriate remedy for all criminal violations involving the unlawful disbursement of prescription drugs. We urge the Court to answer that question in the negative. The word "significant", of course,

---

influences/behavior that led him to become involved in the instant offense". *Final PSR, page 19*.

is a matter of perspective. We would argue that any prison time for a 59 year old father of 2 young children who has never spent time in a prison cell is "significant".

As a side, we would note that it is conventional wisdom in this District that the Government generally looks to a defendant's prior sentence to set a baseline for what is a "reasonable" minimum sentence. Because this is Mr. Garcia's first potential prison sentence, then any term of imprisonment would serve as a "significant" deterrent to any criminal conduct.

Indeed, it would appear to be a waste of resources to imprison a 59 year old first time offender to significant prison time on a non-violent conviction. Why? Because when he is released, he will be well over 60 years old and far outside of the general age bracket for recidivism.

Additionally, ***the collateral consequences for Mr. Garcia attendant to this conviction are in some ways more severe than incarceration***. Specifically, because of Mr. Garcia's criminal conviction, he may serve time in a prison at an age where time is more important to him than to a 21 year old. Mathematically this simply makes sense: a 21 year old receiving for example a 3 year sentence will be released when he/she is 24 years old and an entire lifetime to lead. A 60 year old sentenced to 3 years of prison will be released when he/she is 63 years old and have a lot less of a lifetime to lead. Not to mention, it can not be reasonably argued that 3 years in prison to a 21 year old, all things being equal except for age, is the same as 3 years in prison to a 60 year old.

Furthermore, a federal felony at this age, makes life a lot harder in that he may be declined the opportunity to obtain certain licenses, he may be denied certain educational benefits, he may be denied certain employment opportunities, he may unlawfully be denied the opportunity to live in certain neighborhoods, his international travel may be curtailed and he will be required to report his presence upon entry into certain cities and countries. At 60, with a lot less time to live, prison and collateral consequences take on a whole new meaning of punishment!

For a man that has spent the better part of his life working and rearing several children, the thought that he may spend the remaining good days of his life in a prison cell is enough to deter any similarly situated person from perpetrating similar conduct.

To be clear, Mr. Garcia is a fifty-nine (59) year old man without any criminal record, a structured family unit and two children that depends on him. Thus, the possibility of any recidivism is immeasurably low. Indeed, Mr. Garcia does not face a mandatory minimum and as such Congress has decided that there are situtations where a person can be convicted of this crime and not receive a prison sentence. Mr. Garcia, appears to be a prime candidate for that person Congress was considering. As such, Mr. Garcia should be granted a second chance to continue to prosper and produce in society unabated by the collateral consequences that inevitably flow from serving time in a federal penitentiary. We respectfully ask that Mr. Garcia be sentenced to ***up to 24 months***

*in prison, significant community service as available related to his injury and home incarceration.*

**Protect the public from further crimes of the defendant**

As stated above, Mr. Garcia outside of this conspiracy, Mr. Garcia has maintained employment for over thirty (30) years, helped raise five other children and is currently raising two (2) young children.

Moreover, since his arrest, Mr. Garcia has been fully compliant with Pretrial Services, maintained employment, remained drug free and continues his firm commitment to her family and after his arrest attempted to fully remove himself from anything and anybody associated with this conspiracy.[3]  Therefore, any significant incarceration of Mr. Garcia will not serve to protect the public from future crimes by Mr. Garcia because Mr. Garcia will never again involve himself in any criminal behavior.

Thus, while we agree with the probation department that a significant downward variance is appropriate for Mr. Garcia, it is our belief that Mr. Garcia "poses a low risk for recidivism" and that a sentence of ***up to twenty-four months incarceration and a term of home incarceration with community service*** will definitely protect the public from future crimes of the defendant.

**Provide defendant with needed educational, vocational, medical care or other treatment**

Based upon Mr. Garcia's lack of education and clear desire to remain employed, should the Court sentence Mr. Garcia to a term of imprisonment, we are also requesting that the Court suggest to the Bureau of Prisons that Mr. Garcia be allowed to participate in any qualifying vocational and educational programs and that he be housed in a facility as close to New York City as possible to allow for family visitation.

**Mr. Garcia has a notable work record**

As indicated above, Mr. Garcia has maintained employment for over thirty (30) years since his arrival in the United States at the age of 13. Essentially, Mr. Garcia is exceedingly outside of the heartland of cases that are normally associated with violating 21 USC 846 and 21 USC 841(b)(1)(C).

**18 USC 3553(f)**

As indicated above, Mr. Garcia did meet with the Government and agents and provided truthful information about his participation in this conspiracy that allowed him to obtain "Safety Valve" deductions.

---

[3] She is also seeking employment.  Her arrest, however, has caused her licenses to be suspended thus preventing her from working as a nurse.

## CONCLUSION

We believe that a sentence of **up to twenty-four months of imprisonment, a period of home incarceration and a term of community service** is the appropriate sentence that will ensure that Mr. Garcia is not again inside of any criminal courthouse as a defendant.

Indeed, it cannot be overstated that the following applies to Mr. Garcia:

- Mr. Garcia is not alleged to have committed any violence related to or in furtherance of this federal conduct;
- Mr. Garcia will have strong family support upon exiting prison;
- Mr. Garcia did not obtain any significant value for her participation in the conspiracy;
- Mr. Garcia did not receive any role enhancements for his participation in this conspiracy;
- Mr. Garcia did not recruit anyone to join the conspiracy;
- Mr. Garcia is the primary provider for his two young children; and
- Mr. Garcia does not have any prior adult convictions.

Consequently, because of the above, we believe a sentence of **up to twenty-four months incarceration, home incarceration and community service** is a sufficient but not greater than necessary sentence for Mr. Garcia related to his admission of guilt in this matter.

Respectfully submitted,

/s/ *Xavier R. Donaldson*

Xavier R. Donaldson
Attorney for Daniel Garcia

Attachments
cc:    Assistant U.S. Attorney