

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 2, 2019

**BY ECF**
The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
New York, New York 10007

    Re:    *United States v. Daniel Garcia*, S4 17 Cr. 390 (ALC)

Dear Judge Carter:

    The Government respectfully submits this letter in connection with the sentencing of the defendant, Daniel Garcia, which is scheduled for October 8, 2019, at 11:00 a.m. In their plea agreement, the parties stipulated to a Guidelines range of 87 to 108 months' imprisonment. At the time of the defendant's plea, the defendant had not satisfied the "safety-valve" criteria set forth in U.S.S.G. § 5C1.2(1)-(5). Since then, however, it appears to the Government that the defendant has satisfied such criteria. Accordingly, as explained further below, the applicable Guidelines range is 70 to 87 months' imprisonment.

    For the reasons set forth below, the Government submits that a sentence within the applicable Guidelines range of 70 to 87 months of imprisonment is appropriate in this case, and that the Court should order forfeiture in the agreed-upon amount of $315,000.

    **A.  Offense Conduct and Procedural History**

    The Court is well aware of the offense conduct at issue, having presided over the trial of David Taylor from November 26, 2018, through December 6, 2018, and the *Fatico* hearing with respect to Vito Gallicchio on September 24, 2019. As such, the relevant offense conduct is summarized only briefly below.

    The defendant was a member of a conspiracy to distribute and possess with intent to distribute oxycodone. PSR ¶ 15. David Taylor was a licensed physician who owned and operated his own medical practice on Staten Island. *Id.* ¶ 16. In exchange for cash and gifts, Taylor prescribed large amounts of oxycodone to patients who did not need it, and were instead funneling the oxycodone to drug dealers or were taking the pills to feed their oxycodone addictions. *Id.* ¶ 16.

    As part of the conspiracy, Taylor agreed with Vito Gallicchio—the "crew chief" of the operation—to prescribe oxycodone to phony patients referred to Taylor by Gallicchio in exchange for cash and gifts, including office furniture, appliances, single malt scotch, cigars, and food. PSR

¶ 18. In addition to prescribing oxycodone to Gallicchio himself, Taylor also prescribed oxycodone to multiple phony patients referred by Gallicchio, who sold their pills to Gallicchio. *Id.*

The defendant, Daniel Garcia, is one of several mid-level drug distributors who purchased quantities of oxycodone from Gallicchio for re-sale. PSR ¶ 15. Garcia is accountable for 1,080 grams of oxycodone based on the amount of oxycodone pills—36,000 oxycodone 30 mg pills—that he distributed. *Id.* ¶ 25. At the Gallicchio *Fatico* hearing, Michael Farley testified that he delivered about 100 to 200 oxycodone pills at a time to the defendant, on behalf of Gallicchio, in exchange for cash. *Fatico* Tr. 18-20.

On November 2, 2018, the defendant pled guilty before Magistrate Judge Netburn to one count of conspiracy to distribute and possess with intent to distribute oxycodone, pursuant to a plea agreement with the Government. The Court later accepted the defendant's guilty plea.

In his plea agreement, and during his plea allocution, the defendant admitted the forfeiture allegation with respect to Count One of the Indictment and agreed to forfeit $315,000, pursuant to 21 U.S.C. § 853, representing the amount of proceeds from the offense.[1]

In addition, in the plea agreement the parties stipulated to a Guidelines range of 87 to 108 months' imprisonment. However, at the time of the defendant's plea, the defendant had not satisfied the "safety-valve" criteria set forth in U.S.S.G. § 5C1.2(1)-(5). Since then, however, the defendant has met with the Government and the Government believes that the defendant does satisfy the necessary criteria. Accordingly, pursuant to U.S.S.G. § 2D1.1(b)(18), the defendant's offense level should be decreased by two levels. As such, the defendant's offense level is 27, his criminal history category is one, and his applicable Guidelines range is 70 to 87 months' imprisonment.

**B. Discussion**

    **1. Applicable Law**

As the Court is well aware, although the Guidelines are no longer mandatory, they provide strong and relevant guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"—that range "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). As the Second Circuit has remarked *en banc*, although the Guidelines do not dictate a presumptively reasonable sentence, they are not merely a "body of casual advice." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (internal quotation marks omitted). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as

---

[1] A proposed order of forfeiture is attached as Exhibit 1. The parties will provide the Court a signed original in advance of sentencing.

Hon. Andrew L. Carter, Jr.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 3
October 2, 2019

carrying out the same basic § 3553(a) objectives," *Rita v. United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349.

After making the initial Guidelines calculation, a sentencing judge must then consider the seven factors outlined in Title 18, United States Code, Section 3553(a), including, among others, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentencing disparities.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, including:

> (A)　to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)　to afford adequate deterrence to criminal conduct;
>
> (C)　to protect the public from further crimes of the defendant; and
>
> (D)　to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  To the extent the District Court imposes a sentence outside the range recommended by the Guidelines, the Court must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 50).

### 2. A Guidelines Sentence is Appropriate in this Case

Here, a sentence within the applicable Guidelines range of 70 to 87 months' imprisonment would be sufficient, but not greater than necessary, to address the legitimate purposes of sentencing.

*The Seriousness of the Offense*

The seriousness of the offense cannot be overstated.  For years, the defendant sold tens of thousands of illicit oxycodone pills to people struggling with opioid addictions. He reaped hundreds of thousands of dollars for himself while ruining lives and destroying countless families. He exploited for his own gain one of the most serious public health crises devastating communities throughout New York City and the country.  To make matters even worse, on at least one occasion, the defendant supplied pills to Brian Dolinko—who, in turn, sold them to an informant working with the DEA—that purported to be oxycodone, but were in fact a very dangerous mixture of fentanyl and acetaminophen. *See* Trial Tr. 233-235.

Hon. Andrew L. Carter, Jr.                                                                                                   Page 4
October 2, 2019

As the Court is undoubtedly well aware, prescription opioids, especially oxycodone 30 mg pills, and synthetic opioids like fentanyl are extremely addictive and very often deadly when misused. Both prescription opioids and fentanyl are responsible for massive spikes in overdose deaths in recent years. According to the CDC, drug overdose deaths involving prescription opioids rose from 3,442 in 1999 to 17,029 in 2017.[2] Furthermore, among the more than 70,200 drug overdose deaths estimated in 2017, the sharpest increase occurred among deaths related to fentanyl and fentanyl analogs (other synthetic narcotics) with more than 28,400 overdose deaths.[3]

The defendant could not have been oblivious to the potentially deadly effects of oxycodone and opioids. In fact, James Impellizine—who, as discussed in pre-trial motion practice and arguments, was a patient of David Taylor—lived in the house attached to the defendant's and died from an overdose of prescription drugs during the course of the charged narcotics conspiracy. Notwithstanding the death of his neighbor and many others, the defendant continued to sell and profit from deadly drugs.

A Guidelines sentence is needed to reflect the seriousness of the defendant's conduct and the serious harm he has caused by flooding the streets with tens of thousands of illegal oxycodone pills and, in the process, fueling addictions and destroying lives.

*The Need for Adequate Deterrence*

The Court must impose a sentence that affords adequate deterrence to criminal conduct as to this defendant and others similarly situated. While this may be the defendant's first conviction, it is not the first time the defendant was caught. The defendant has been arrested at least twice before and on those two occasions Gallicchio paid for the defendant's bail so that the defendant would not "rat." PSR ¶ 67; *Fatico* Tr. 19-20. Those prior arrests, which did not result in prison sentences or convictions, could have been turning points for the defendant that deterred him from continuing to sell oxycodone. But the defendant was not deterred. And while the instant case may be the defendant's first conviction, it is not the result of just one bad decision or misstep. For *years*, the defendant repeatedly and deliberately chose to sell highly addictive and dangerous drugs over and over again as part of a very profitable long-term criminal relationship with Gallicchio. Furthermore, while the defendant has a history of legitimate work and a large family, those obligations and priorities did not deter the defendant and will be not sufficient to deter the defendant in the future. Notwithstanding his work history and his family, the defendant *still* committed the instant offense. The Court's sentence should send a message to this defendant and others that engaging in long-term criminal behavior like the defendant's will be met with serious consequences.

---

[2] https://www.drugabuse.gov/related-topics/trends-statistics/overdose-death-rates

[3] https://www.drugabuse.gov/related-topics/trends-statistics/overdose-death-rates

Hon. Andrew L. Carter, Jr.  Page 5
October 2, 2019

    For the reasons set forth above, the Government submits that a sentence within the applicable Guidelines range of 70 to 87 months of imprisonment is appropriate in this case, and that the Court should order forfeiture in the agreed-upon amount of $315,000.

    Respectfully submitted,

    GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York

By: *[signature]*
    Justin V. Rodriguez
    Kiersten Fletcher
    Nicholas Roos
    Assistant United States Attorney
    (212) 637-2591

cc:    Counsel of Record (by ECF)